The last case on our calendar, State of New York, State of Connecticut, et al., and City of New York versus United States Department of Justice. Good afternoon, Your Honors. May it please the Court, Brad Henshaw on behalf of the Department of Justice. The conditions at issue in this case ensure that states and localities that receive federal law enforcement grant money provide a baseline level of cooperation with federal enforcement of the immigration laws envisioned by the Immigration and Nationality Act. Plaintiffs here insist that they may demand these funds while refusing this basic cooperation, to the point of refusing to certify that they comply with 8 U.S.C. Section 1373, a federal statute that exists to ensure the free flow of information between states and localities and the federal government where they exercise their regulatory authority over the same individuals. Well, just so I'm clear as to where the parties may have some common ground, you don't deny that the AAG's powers are those vested pursuant to the chapter or delegated to him by the AG, right? So we have to look for this authority in those two sources. Your Honor, yes, but our understanding of Section 10102a6, which you've just quoted, the important point there is that that language, the including clause of the statute, was added by Congress in 2006. Before 2006— I understand the disagreement between the parties as to including, but bear with me for a moment, and let's now go to the statute here, the Byrne Act. What is it in the statute that you think satisfies that language in 10102? It's that clause itself, Your Honor. The including clause is what's conferring the relevant authority here, because otherwise it carries no meaning, and it meant that Congress added that provision to no purpose at all, which is not what we generally presume Congress does when it amends statutes. So you don't—you think he can put any condition on grants at all? Your Honor, the statute confers on him the authority to place special conditions, which, you know, obviously there are some constraints on that. Let's assume he don't quite go that far with you, and we think that you do have to point to some vested power that he has. Where do you locate that in the Byrne Act? Well, Your Honor, as to the conditions that are imposed here by virtue of the special conditions authority, there's no other vested separate provision that's being relied on. The point is that—and, you know, the district court, the plaintiffs here, no one has identified any other provision anywhere that would actually—that this including clause would be referring to, which would render the— I have just some to you. 10153 requires the applicant to maintain and report information as may reasonably be required. So it would seem to me that they could impose a condition that you satisfy that. Right. There's a requirement that you have to certify in a form acceptable to the AG appropriate coordination. So it would seem to me you could impose a condition along those lines, and you have to certify that you will comply with this part and all other applicable federal laws. So you could impose that condition. You don't think the statute gives—the statute vests any condition authority on you, the Byrne Act, that is? Your Honor, I think the point there is that those powers would exist and would be the same if Congress had never amended the statute in 2006. The AAG would have been able to carry out his duties under the Byrne JAG statute without Congress adding the including clause to the statute at all. So in order to give that addition any meaning, it has to be that it's conferring some new authority on the Assistant Attorney General to add special conditions and place priority purposes. Otherwise, Congress amended the statute to no purpose. But am I right in understanding that the end result of that argument is the AAG can impose absolutely any condition he wants as long as it doesn't, you know, violate the Constitution? Well, Your Honor, it certainly has to be germane to the purposes of the grant, and there's been no argument really made here that the, you know, particular condition is itself not—that these particular conditions which relate directly to the relationship between federal law enforcement and state and local law enforcement are somehow not germane under that sort of understanding. So, you know, in order to give the statute meaning, it has to be the case that there is some novel authority being conferred here, and that's confirmed, you know, we think, by the legislative history as well, which emphasizes that it's conferring authority to place special conditions. So you know, that provision itself is what's doing the work of providing the sort of key authority here for the Assistant Attorney General. The other—and then of course the other condition issue here is the requirement that the plaintiffs certify their compliance with 8 U.S.C. Section 1373, for which there's sort of an additional statutory basis, which is the requirement that BernJAG applicants certify their compliance with all provisions of this part, meaning the BernJAG statute and all other applicable federal laws. And there's no serious doubt, I think, that Section 1373 applies in a general sense to the plaintiffs at issue in this case, and you know, that statutory language ensures that grantees that want to receive federal funds, federal law enforcement funds, will in fact comply with federal law. And there's nothing unusual about Congress expecting— Yes. I mean, we certainly expect— The advantage of the certification at that point is— Well, Your Honor, I think in this situation, you have an excellent illustration of the advantage here, which is that in 2016, the Office of the Inspector General at the Department of Justice conducted a review in response to concerns raised by DHS and folks at DOJ about the compliance of jurisdictions across the country with Section 1373, and it singled out, among other jurisdictions, the City of New York as a jurisdiction of particular concern that they might not, in fact, be complying with that statute. And so in 2016, the Department identified Section 1373 as an applicable federal law for purposes of the BernJAG statute, and then in 2017, simply added the certification to draw sort of particular attention to jurisdictions' compliance with that statute. And in fact, in the FY 2016 grant that the City of New York received, there was a condition placed that asked the City of New York to conduct a review of its own compliance with Section 1373, which the City, you know, accepted its grant subject to that condition without complaint. So, you know, yes, you're right. I think certainly we would expect generally that states and localities would comply with federal law, but to the extent that there were specific concerns that were raised about that statute, and the Department has since 2016 recognized that it's an applicable statute for purposes of the BernJAG program, you know, there were reasons for the Attorney General to exercise his authority to, you know, require an application in a form acceptable to him to, you know, single out that particular statute for special attention. If there are, I'd like to just briefly mention we have at length in our briefs made clear that we don't believe the constitutionality of that statute is issued in this case. But if there are further questions, I'll reserve the remainder of my time. And that's because in this case it's being applied in connection with a funding requirement. That's why you think the statute falls out? Correct, Your Honor. Good afternoon, Your Honor. May it please the Court, Anisha Descupta on behalf of the state plaintiffs, and I'll also be presenting argument on behalf of the city plaintiffs. The disputed requirements here are unlawful executive branch incursions on the funding scheme that Congress designed for BernJAG grants. This is clear? With the question I put to your adversary that if it can be located, if the AAG's exercise of authority can be located in the Bern Act, that then it would not be a problem with conditions, right? That's right. Why don't we stay with the conditions that I identified for him, working first with the requirement for coordination among affected agencies. Now, again, just so that we use an example that I would find useful, there are . . . money is being used for reentry services for offenders and also for residential substance abuse treatment for prisoners. Prisoners. To the extent that what the statute we're dealing with here involves is prisoners coming back into federal custody after they serve their state jail time, why isn't it appropriate as a part of the coordination obligation that the states have under the statute to require that they satisfy a condition of complying with the statute, with the immigration statute here with 1373? Look, DOJ here doesn't have the ability to require whatever coordination with whatever agency it deems is affected. What that language means is that there are agencies that will be affected by the grant proposal, and there are also various provisions of Bern JAG and of statutes applicable to Bern JAG that require coordination with other agencies. So, for example . . . . . . using federal money for reentry services for offenders and for residential treatment programs, at that point, the federal government has an interest in why that's happening as opposed to the people just being turned over to immigration authorities. So, I find it hard to understand how it's not appropriate coordination at that point and, therefore, why they can't require you to certify that you're doing it. Because what DOJ is doing is it's not enforcing, with respect to this provision or any other provision of the Bern JAG statute, it's not enforcing an existing requirement that Congress put on the Bern JAG grant. So, what it's doing is these three conditions are new substantive requirements to receive the money in the first place. What Your Honor is talking about . . . . . . appropriate coordination with affected agencies. You have to certify that. And the notion that they can't ask for, they have the right to ask for, information data records, as may reasonably be required, I would think they can ask you, who are you coordinating with? They can certainly ask . . . And what's the coordination involve? And does that coordination involve compliance with federal laws for the turnover of prisoners when you're asking for money for reentry? So, your basic argument that this condition is not reasonably linked to this statute is one that I'm having trouble with. Okay. Well, so, in order to understand the requirements of the Bern JAG statute, we have to see them within the context of the detailed distribution scheme that Congress created. Congress said that money was going to be available to states and local governments based on a formula that looked to their population and their crime statistics. And Congress had certain other things, certain other factors that DOJ can consider after the money is dispersed. These are various use requirements or use restrictions that Congress put into Bern JAG or into other statutes that control federal financial assistance. But DOJ doesn't have the ability to impose new requirements of coordination with other agencies or even link the Bern JAG scheme to other federal statutes. Regardless of the constitutionality of 1373, for example, DOJ can't import new requirements to get Bern JAG funding because that would convert Bern JAG from this mandatory formula grant scheme into a discretionary grant. So we have to understand those words within the context of what we know Congress was trying to do here. What Congress was trying to do here was ensure appropriate coordination with the affected agencies. And as the Third Circuit noted when glossing this language, that's in the past tense. It establishes that you have to show there has been appropriate coordination with the agencies that are going to be affected by your grant proposal or the agencies that Congress already required you to coordinate by means of statutes that Congress applied to Bern JAG. Now, DOJ says that the reason why this language has to be read to impose an ongoing obligation is because then otherwise it wouldn't be able to ensure that grantees are doing what they proposed to do and complying with the obligations that Congress imposed.  It's too easy. I mean, the one works in the past tense that you have complied. And if they see that you haven't complied with coordination such as 1373 envisions, then they can ask you to certify that you will comply in the future. So the statute seems to provide for both what you've done in the past and what you would do in the future. The Bern JAG statute certainly does, but it's that last part that's a problem, Your Honor, the part where Your Honor said the coordination that 1373 requires. Congress did not link 1373 to the Bern JAG statute either via the Bern JAG statute itself. Bern JAG doesn't incorporate 1373. And in 1373, it didn't say this should apply to the Bern JAG statute, this should apply to federal financial assistance. And the problem here with all of DOJ's arguments focuses on that link. The plaintiffs here are not contesting that Congress has the ability to put conditions on federal funds, that Congress could even put conditions on federal funds that Congress could not enact separately as a mandate. But Congress has to draw the link. Those conditions have to come from Congress, and we know that. This statute does provide for all kinds of certification requirements by you. But now you don't want to have to certify that you're complying with 1373 or that you're coordinating with the federal immigration authorities, but yet you're taking money for prisoners and reentry services, and that seems to me to be exactly what the statute is linking to. Am I missing something in your argument? It's that we don't understand that the certifications make that link. When the certifications say appropriate coordination, the court has to consider what does coordination mean, and the court has to analyze that language there. What does it mean with respect to authorities when you're involved with prisoners? Who is affected? So, these particular requirements are being imposed on everybody, regardless of how they are using the Bern JAG funding, and the plaintiffs here are using it for a wide variety of authorized purposes, and almost all of those are very remote. Your Honor is talking about a very narrow instance of reentry services. Most of this money is being used for things that have nothing whatsoever to do with prisoners, like forensic laboratories, at-risk youth. Well, that narrows it, right? It sounds like we can at least agree that this language would not be authorization to impose these new requirements as requirements on every grantee to get the money, regardless of how that grantee plans to use that money within the terms of the Bern JAG statute. But that's exactly how DOJ is using that language. They are using it to impose a general requirement to get the funding. You're dealing with parties, one of whom thinks it can impose it without any limitations, and the other of whom thinks it can't impose it at all, and I'm suggesting to you that neither argument may be completely persuasive. So, you know, why don't you defend yours? Sure, well, our line and our limitation is very clear, that this is a funding statute, and so if we would like to get this money, we are bound by the terms that Congress has set forth. And when this Court is determining what terms did Congress put on the funding, there are two background principles that the Court has to consider. The first is the principle articulated by the Supreme Court in Pennhurst, that when Congress puts a condition on federal money, it has to do that clearly and ambiguously. So that's part of the problem with DOJ's all-applicable laws argument, but it would also apply here if DOJ had the ability to say at will what agencies it deemed to be affected, what coordination it could— Yes, all-applicable laws. If the federal government had an application for a Burns Act grant by a local law enforcement group that had had some problems with its use of force or its discriminatory practices, et cetera, you don't think that they could require a certification that there would be compliance with all of the civil rights laws that exist in the United States? Civil rights laws, absolutely, because Congress made those applicable to federal financial assistance. So to understand the meaning of all-applicable laws, we have to actually look to the language, that entire language in A5D. So the assurance says that the applicant will comply with the provisions of this part in all-applicable laws. So if all-applicable laws is read, as my friend suggests, to include any law that could conceivably apply, the provisions of this part would obviously be superfluous. And that's the case even with respect to germaneness, right? What all-applicable laws means here are laws outside of Burn-JAG that Congress made applicable to Burn-JAG. So if there are laws in which Congress has referenced Burn-JAG or referenced federal financial assistance, those are the applicable laws. They're laws governing federal grants and any other external laws Congress linked to Burn-JAG. And that's consistent with this background rule from Pennhurst. Is there statutes that Congress expressly made conditions for the Burns Act? Well, there are a whole variety of them. Some of them are the ones that the Department of Justice cites as authority for the conditions that it has imposed on all... I have a good chunk of the Burns Act with me. I'm just curious as to where you think that they have specifically identified statutes. So there are some... It's not... Let me step back. The statutes that Congress identified, the external laws, those are things like anti-lobbying provisions, requirements combating human trafficking, civil rights laws. Those in the Burns Act? In the Burn-JAG statute, well, so those statutes say any time you get federal financial assistance you have to do certain things. The Burn-JAG statute is federal financial assistance. Do you think the only statutes that apply are statutes that themselves refer to federal funding? Or to Burn-JAG. So Congress has requirements like body armor standards that it has put into the Burn-JAG statute. So DOJ can impose conditions that relate to that because that's a requirement of the Burn-JAG statute. Congress has imposed requirements on federal grantees generally. DOJ can impose conditions that are designed to make sure that grantees are complying with those other laws. So for example, Your Honor's hypothetical about the civil rights law. Congress made that applicable. So it is an applicable law. We have to look to the Pennhurst principle. We also have to look to another statute that Congress enacted and made applicable here. And that's the statute 10228, which is Congress's express mandate that statutes providing federal law enforcement grants not be construed to allow the federal executive to direct, supervise, or control state or local criminal justice agencies. And these two things, the Pennhurst principle and 10228, form the background principles for interpretation in this case. Because what they say is that if there's ambiguity about whether a law enforcement grant statute authorizes a particular DOJ requirement, a particular executive requirement, that ambiguity has to be construed against the executive. So it doesn't say anything about the scope of Congress's authority, but it just says if Congress hasn't spoken clearly, if Congress hasn't linked a statute, DOJ cannot. And the history of 1373 is instructive in this regard. So there were many proposals made to Congress to link 1373 specifically to the Bernjag statute. And Congress repeatedly rejected those proposals. So for DOJ to read all applicable laws in order to import 1373, is DOJ making an end run around Congress? Now we know that when DOJ proposes to Congress to include some requirement and make that apply to the Bernjag statute, Congress is receptive. For example, the body armor provision, which DOJ applied before that was a legal requirement in the Bernjag statute. They point to it as a precedent for applying other conditions here. The fact that nobody challenged that doesn't make it a precedent for anything. But what's significant is that when DOJ asked Congress to include that, Congress thought it was a good thing and included it. So Congress is eminently capable of listening to what DOJ thinks are desirable requirements and including those. All three of these requirements here, if Congress found them desirable, Congress could include them. But to allow DOJ to transform this scheme that Congress has created into money that can be given out at its discretion. This is basically a situation where Congress has said, here is money for state and local law enforcement officials to use for their own local needs and priority. DOJ, you're the administrator. Give out this money. Make sure that states and locals are complying with the conditions that we set. And DOJ turns around and says, you can have this money, but only if you do a little something for us. Do a little something for us. It's not something that Congress put into a condition in the Bern JAG statute. It's not a requirement in Bern JAG. It's not a requirement of any other federal law, but do this for us and we'll give you the money that Congress said you should have. And that's exactly what DOJ cannot do here. That is a violation of the separation of powers. That's DOJ intruding on this distribution scheme that Congress set and converting this grant into a discretionary grant. I just want to address my- 1373. Whether the state is in violation of DOJ is never alleged that the state is in violation of 1373. And in fact, the administrative record here shows, I'd like to discuss a little bit later why the district court concluded that this was arbitrary and capricious for DOJ's failure to address things that are in the administrative record. But one of the things that was in the administrative record that DOJ was aware of is that when it surveyed state and local law enforcement officials that it deemed not to be complying with 1373, some of them told DOJ, oh, we are. There was confusion about what it means to comply with 1373 and DOJ's own interpretation keeps shifting and changing. But I want to return to this including clause in 10102A6 because I think this court recognizes that this is a very unlikely source for Congress to have given DOJ new authority. But my friend says, you have to read it as giving us new authority because if you don't read it that way, it would be meaningless. There's no reason for Congress to have done that. That's just incorrect. What this including language does is it establishes that exercising delegated special conditions authority from the Attorney General falls within OJP's particular duties and responsibilities as a coordinating entity. And it establishes that OJP can exercise that delegated authority with respect to, quote, all grants. And the reason why that is a helpful clarification that is meaningful and serves a purpose is that there are other statutes that give particular grantmaking offices final authority over the grants that they give out. So if OJP is going to impose special conditions, there are statutes like the statute that governs the Bureau of Justice Assistance, that governs the Bureau of Justice Statistics, that governs the Director of the National Institute of Justice, the Office of Victims of Violent Crime, so on. All of these statutes say final authority. So Congress was doing something there. What it was doing was saying, OJP, you can serve your coordinating role even if there are other statutes that give other grantmaking offices nominally final authority over their grants. And this wasn't new authority because DOJ grantmaking offices were placing special conditions on grantees since at least 1988. That's memorialized in regulations that DOJ had in place from 1988 to 2006. We cited those in our brief and produced those as exhibits to our summary judgment motion. But the authority, Your Honor asked earlier, what was the authority for special conditions? That came from the statutes that created the very grants themselves. Because a special condition is a condition that's imposed on a particular grantee designed to make sure that that grantee complies with existing requirements of the grant. So that's, of course, within DOJ's authority when it has a grant where Congress has specified certain requirements. And this is consistent with everything we know about the concerns that Congress had that motivated it to add that language in the first place. When Congress added that language, it was expressing concerns that OJP, which it created to perform a coordinating function, was not exercising sufficient oversight. I think we've got your argument, Ms. Huffman. If Your Honor will, I'd just like to finally address the argument about 1373 violating the Tenth Amendment because the district court here granted the plaintiffs in this case an injunction against the application to the plaintiffs of 1373. That was entirely correct because the Supreme Court's decision in Murphy makes clear that the Tenth Amendment analysis doesn't distinguish between a directive to allow some act and a directive not to prohibit an act. And that's exactly what 1373 does. It issues a directive to state legislatures and state and local executive agencies and employees and it tells them that they may not prohibit the sharing of information regarding immigration status with the federal government, and it does so only with respect to their own instrumentalities and employees. How does this apply with respect to funding? Congress can impose conditions with funding, so I would think that their argument either stands or falls with whether or not this is a permissible funding condition. If it is, whether it's a constitutional violation in other circumstances is not before us today. It's before the court because of this component of relief that was ordered by the district court. It's true that nothing about the invalidity of these funding conditions would turn on whether 1373 is constitutional because 1373 was not an authorized condition in the first place, right? And if Congress had attached 1373, it could be. That's our argument, but separately from that, we ask the district court for a declaratory judgment as to the constitutionality of 1373. Would that be an issue in this case at all, where we're only concerned with whether or not they can impose it as a funding condition? Well, there is a background principle that was recognized by the Supreme Court that says that if there is language, like this all applicable laws language, in interpreting that language, it can't be interpreted to encompass a law that is unconstitutional, so that's Branch v. Smith, right? So regardless of the scope of DOJ's authority here with respect to all applicable laws, they can't use that language to import in a statute that is itself unconstitutional as a freestanding mandate. Congress can impose a condition like 1373 and make it constitutional by linking it to a fund or linking it to Burn Jag, but DOJ can't make that link itself. It can't take an unconstitutional statute and make it a constitutional statute on its own initiative. It doesn't have that authority. All right. No, it's enough. Thank you. Thank you very much. Before we hear Mr. McStinchell, we have five minutes for the Civil Liberties Union. May it please the Court, Spencer Amdur for Amici. I'd like to briefly address the Department's primary claim of authority in the special conditions provision, and then I'd like to go back to Your Honor's questions about the Jag statute. The special conditions provision can't provide the unlimited statutory authority that the Department claims because it uses a term of art, special conditions, which refer to conditions that simply ensure a grantee complies with existing terms of its grant. That's how everyone in the grant world used the provision in the decades leading up to 2006, including every single mention in the U.S. Code, the CFR, the Federal Register, and in every grant law treatise we could find. The Department simply has no answer to that. The only thing it said is that the statute doesn't explicitly incorporate the Department's own special conditions regulation at the time, but of course the point isn't that Congress incorporated any one regulation. The point is that it used a term with an established meaning, and that meaning is reflected not only in that regulation, but in countless other authorities. Just to add to what New York said about what was the purpose of adding this including language, if you look at pages 89 to 91 of the House report, Congress made crystal clear what problem it was addressing, and that was that grantees weren't adhering to the terms of their grants. I believe the report on page 90 says that the problem was, quote, grantees who do not comply with grant terms, exactly the situation where you'd impose a special condition within the term of art meaning. And so what Congress did on page 91, it says that it was in the OJP Amendment Statute in 2006, it was enacting an, quote, integrated package of management reforms to ensure that OJP actually policed compliance with the terms of its grants. So it did a number of things. It created an Office of Audit and Assessment in 10109. That's what may have motivated it, but we start with the language, we don't start with what the motivating factor was, right? I agree, but here the motivating factor perfectly matches the language Congress used. It said special conditions. And I mean, the Department doesn't even have a theory as to why the Department would use such a unique phrase that it almost never uses, if not to mean what everybody in the grant world understood that term to mean. You know, when Congress wants to refer generally to spending conditions, it just uses the term conditions or appropriate conditions, reasonable conditions, et cetera. You know, we've cited a dozen examples like that on page 24 of our report. Is it a special condition to require grantees to abide by the terms of the grant? It seems a very strange special condition. Well, that's how every agency and the OMB have always used the term, Your Honor. I mean, if you look at all of their regulations, the types of conditions that qualify as special conditions are accountability measures, things like reporting requirements, training requirements, things like that. All they do is reinforce the existing grant terms for a grantee that has some risk of noncompliance. The language, though, seems a very awkward way to do that. The AG has delegated the authority to place special conditions on all grants, not to require compliance with the conditions of all grants, to place them on the grants. And the language of the statute itself, the Byrne Act, says that the AG can require data, information. I mean, the grant itself may not specify all the information that, as I read this now, the AAG might require in order to make sure you're complying with your conditions. We now want you to document A, B, C, and D. That would not have been a condition of the grant itself, but he can now place those on the grant. That's right, but that's because 101-53-A-4 specifically authorizes those kinds of record-keeping provisions, right? That doesn't rely on unlimited authority from A-6. So the point is, the head of OJP . . . But what those records and data are is left to the discretion of the AAG now. Well, that's true, but those are meant to be, like the statute says, programmatic and financial records about the funded JAG program. Turning, though, to the JAG statute, because I know Your Honor had questions about that, if I could just briefly address the coordination certification that you mentioned. The Third Circuit unanimously rejected the argument that that provides authority, open-ended authority for the Department to require the nation's state and local police to coordinate in whatever way it wants with federal agencies, and there are a number of reasons for that. You might have heard my question. I was tying it to what this particular grant money is being used for and how it would be a kind of expenditure that would contemplate that kind of coordination. I mean, we're talking about releasing people from jail, programs that talk about that, and the federal expectation is that when people are released for whom there are immigration detainers, that they are going to come into federal custody. Well, first of all, the Department isn't only applying this condition in that narrow context. I understand that, but we'll start with that. Well, in that context, the statute still is not phrased as a grant of authority to impose new conditions, which everyone agrees these are new conditions. It requires coordination. Now, you know, I suggested to counsel for New York, you're not saying that isn't a question, like who do you coordinate with, what did that coordination involve, and when the coordination does not involve the federal government with respect to a release program, there could be a view that that's, they're not, in fact, coordinating as you would expect them to. Well, the statute asked, did you coordinate in the past with agencies that are affected by your actual JAG project, and the reason that it's not just that it uses the past tense, though that's obviously important, it's that all of the neighboring certifications are narrowly about coordination leading up to that. Precisely that reason, let's be precise. It doesn't ask you, did you coordinate, yes or no, we're asking this just for information. You have to certify that you did coordinate. That's right. Right. And so my suggestion is when you're not certifying coordination with the federal government, you have not, you cannot certify that you did coordinate. But the type of coordination that DOJ is asking for here is an ongoing, daily, operational form of coordination. That's because you also have to comply with applicable federal laws, and one of the applicable laws pertains to the kind of cooperation you have to do with the federal government. Well, I mean, to turn to the applicable laws provision, the reason that that doesn't support, it's only one condition that they're claiming that supports, which is the 1373 condition. It doesn't do that because in the context of this statute, as the Third Circuit held, applicable laws refers to laws that are applicable to grants, and 1373 says nothing about grants. There's nothing in it. If a grant relates to release programs, are you taking the position that 1373 is not applicable? Well, the statute doesn't require a certification of compliance with any law out there that has some logical nexus to one possible use of JAG funds. And again, side note that most JAG grantees aren't using it for that purpose. They're using it for school safety, courtroom technology, what have you. The problem is that the statute doesn't impose that kind of amorphous, you know, does this have some connection? And second, local officials certifying this compliance would have no idea which set of laws they were certifying, if that were true. As the Third Circuit said, every single neighboring provision . . . We'll deal with the Third Circuit another time. Thank you, Your Honor. Mr. Inshelwood, your adversaries have gotten some extra time, so this is your big chance. I've waited for that my whole life, Your Honor. Just three quick points, Your Honor, that I'd like to go through, addressing some of the things my colleagues have said. First, turning to the Special Conditions Authority and 10102A6. I think one thing you'll notice is that in addition to the concerns that Your Honor has already raised about sort of the other provisions of the Bern JAG statute, the programmatic and financial information, and, you know, the 101153A4 and 5C provisions, you know, we have not heard any explanation for . . . or any compelling explanation for what purpose Congress's 2006 amendment serves. So even beyond the provisions Your Honor has already identified, the including clause itself needs to be given some purpose or meaning. My colleague didn't suggest there was any question prior to 2006 whether the AAG had the authority to exercise, you know, powers that were already vested in him by virtue of, you know, other provisions of this part or by delegation. Let's use a different funding purpose. If I understand the briefs correctly, some departments use the money to purchase body-worn cameras. I assume those are the cameras police wear when they're out on the street. Now how does requiring compliance with 1373 for grants that fund body cameras, how is that link made? Well, Your Honor, so turning to the compliance condition, which is Section 1373, which again has a different statutory hook, that is required because Congress has made that statute applicable. It is an applicable Federal law within the purpose of the program. To New York State? Yes, Your Honor. I mean, it's applicable to the . . . So every law that is applicable to New York State, they have to certify that they comply? Your Honor, it certainly still has to be germane, again, to the purposes of the grant program. It can't be every single statute. That's how I should phrase my question. How is 1373 germane to a grant for body-worn cameras? Because Your Honor, what we have here is a Federal law enforcement grant going to State and local law enforcement entities, and in the course of giving that grant out, it's not at all odd to think Congress would expect that jurisdictions would be complying with Federal law that regulates the way State and local law enforcement interacts with Federal law enforcement. I just want to be an adversary to the very end of the criminal law process where they're about to release people who've been convicted. The police wear body-worn cameras, sometimes in circumstances where they don't even arrest anyone, let alone prosecute them and have them serve jail time. So you're much more removed, and I'm not understanding your argument for why 1373 is an applicable law for a grant that deals with body cameras. I mean, there may be an answer, but it's not apparent to me, so I'm asking you. Your Honor, again, the relevant question for purposes of what counts as an applicable Federal law in this context is whether it's one that's germane to the purposes of the Bernjag grant. And the grant itself, again, as you've pointed out, goes to grantees for all sorts of different narrow purposes, but the overall purpose of the grant is to provide Federal funding to State and local law enforcement entities, and in doing so, Congress expected that those entities comply with laws that address, in particular, as in the case of 1373, the relationship between State and Federal law enforcement. Are there any other Federal laws that the States were required to specifically, by number, say that they complied with other than 1373? No, Your Honor, but that's, I think, a reflection of the fact that States and localities don't generally say that they don't want to comply with Federal law. I mean, you had, as I've discussed earlier, the 2016 OIG report that raised specific concerns about compliance from a variety of jurisdictions, including the City of New York, one of the plaintiffs in this case, and as a result, the Department singled out that statute for particular attention, and I don't think there's anything, I mean, what's novel is the fact that, you know, we have jurisdictions that simply do not want to assert, or do not want to certify their compliance with Federal law. Turning briefly to the term of art discussion, there's no indication in the statute or in any of the preexisting regulations that this, that the Bernjack statute meant to codify or import some narrow preexisting understanding. The preexisting Department regulation itself did not purport to define the universe of possible special conditions. It talked about a particular type of special condition, and indeed, it still wouldn't solve the core problem with plaintiffs' reading of the statute, which is that it would render the 2006 amendment meaningless, because again, the regulation they point to existed before the amendment. There was no doubt. No one had challenged it. No one seemed to think there was any question that the AAG had that authority prior to the 2006 amendment, so it's not at all clear why an amendment was necessary to make that clear. Are you doing this, imposing conditions on other grant programs other than the Bern Act? I believe so, Your Honor. I mean, the AAG for OJP has dozens of grants under his purview, and in fact, if you look at— And are there any special conditions imposed? I believe there are, and in fact, Your Honor, if you look at, I mean, the grant documents in this case, New York's 2016, New York City's 2016 grant had 53 special conditions in it. They're all labeled special conditions. It takes up several pages in the appendix of all the different special conditions. The DOJ has been issuing general special conditions for years, no? Correct, Your Honor. I mean, certainly, these grants have had special conditions for a long time, and— What are they? Give us some examples of those special conditions. So in the past, it's imposed, you know, conditions related to body armor purchases, conditions related to training requirements, to the purchase of certain military-style equipment. Are these examples of special conditions where the—there was no statutory authorization for the requirements? Some of them, yes. So, for example, the body armor—or, excuse me, all of them, all the ones I've just mentioned are. I mean, the body armor requirements, for example, as the State's counsel discussed when she was at the podium, those were originally imposed purely as special conditions and then subsequently codified by Congress, you know— Requiring the purchase of body armor? Requiring certain— Aspects. Requirements. Yeah. Imposing certain requirements related to the purchase of body armor. Military equipment was basically a negative. It was a prohibition on the use of the money for military equipment. Correct, Your Honor. And so it goes—and then there are some prohibited purposes that go beyond—excuse me, prohibited purchases that go beyond what is already laid out in the statute. So there have been instances where the Department has imposed these conditions, again, without much surprise or objection, I think, from the grantee community. And finally, Your Honors, I just want to address on the question about 1373, the injunction in this case, the injunction that's on appeal here, enjoins the Department from imposing the challenged conditions. And I think that's significant. I believe my colleague suggested that it might—the injunction might run against 1373 itself, but that's not what the injunction reaches. It reaches only the imposition of the conditions, including the 1373 condition. And so I think that underscores why the constitutionality of that statute is not at issue in this case. Can you just speak for a moment to what counsel for New York State said was your efforts to get Congress to make the immigration statute applicable to the Burns Act unsuccessfully? Your Honor, if counsel was referring to the example cited in the state's brief, in the city's brief, the failed legislative history they're referring to, and setting aside whether failed legislative history is ever an appropriate ground for, you know, informing an interpretation of a statute. But look, if you look at those specific proposals, some of them don't relate to the Burns Act statute at all. They're talking about grants under Title 42, community development block grants, other such things. And then others would have made certain requirements mandatory on the Department, would have given the AG or the AAG no discretion as to the particular requirements that they impose on the grant, which is different from what the Special Conditions Authority already does, which is give a discretionary authority to the AAG to make conditions as appropriate. Can you spare us requests from the Department to add the 1373 requirement to the Burns Act? Did the Department seek that? I'm not aware of requests from the Department. I know there were, you know, letters written by members of Congress to the Department discussing whether 1373 compliance could be imposed. And then there were legislative proposals, which plaintiffs appointed to. But I'm not aware of any such examples. Thanks very much. We'll reserve the decision. We appreciate the argument of all counsel very much. You're adjourned.